129 F.3d 372
 156 L.R.R.M. (BNA) 2929, 134 Lab.Cas. P 10,091,
21 Employee Benefits Cas. 2057,
Pens. Plan Guide (CCH) P 23946S
 NATIONAL LEADBURNERS HEALTH AND WELFARE FUND, National
Leadburners Pension Fund, Jack Stilwell, Ben
Damoci, Richard McNabb, Robert S. Ray,
Trustees, Plaintiffs-Appellants,
v.
O.G. KELLEY & COMPANY, INC., Defendant-Appellee.
 No. 94-5032.
 United States Court of Appeals,
Sixth Circuit.
 Submitted Sept. 19, 1997.
Decided Nov. 19, 1997.
 
 Cynthia R. Vullo (briefed), Koff, Wendolowski, Ferguson & Mangan, Wilkes-Barre, PA, for National Leadburners Health and Welfare Fund, Jack Stillwell, Richard McNabb, Ben Damoci, Robert S. Ray.
 John B. Rayson, Kramer, Rayson, Leake, Rodgers & Morgan, Knoxville, TN, for National Leadburners Pension Fund.
 Ashley B. Abel, Abel & Hendricks, Spartanburg, TN, Gwendolyn D. Burgess (briefed), Earl R. Booze (briefed), Johnson, Booze & Burgess, Johnson City, TN, for Defendant-Appellee.
 Before: NELSON, BOGGS and COLE, Circuit Judges.
 COLE, Circuit Judge.
 
 OPINION
 
 1
 This case concerns the satisfaction of a Labor Management Relations Act ("LMRA") provision requiring a "written agreement" in order for any monies to be distributed from an employer to a fringe benefit trust fund. The question presented is whether the statutory "written agreement" requirement for an employee benefit trust fund includes a requirement that the employer sign the agreement. The appellants appeal the district court's dismissal of their action, arguing that the district court erred in interpreting LMRA § 302(c)(5)(B), 29 U.S.C. § 186(c)(5)(B), to include such a requirement. We agree with the appellants and reverse the district court.
 
 I. FACTS
 
 2
 Plaintiffs-appellants are trustees of the National Leadburners Health and Welfare Fund and the National Leadburners Pension Fund as well as the Funds themselves (collectively "Funds" or "appellants"). They brought suit to enforce contributions that they contend are owed to the Funds under the terms of collective bargaining agreements. The Funds are "multi-employer plans" established pursuant to collective bargaining agreements negotiated between Lead Burners Local Union No. 153 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("Local 153" or "the union") and the National Lead Burning Association ("NLBA").
 
 
 3
 The union is a labor organization representing employees in the lead burning line of work. The defendant-appellee, O.G. Kelley & Company, Inc. ("O.G. Kelley"), is a Tennessee company with employees who perform lead burning work. The NLBA is a multi-employer association whose members are employers engaged in lead burning work throughout the country. The NLBA negotiates collective bargaining agreements with the union on behalf of its member employers. The NLBA and the union have been parties to collective bargaining agreements for several years.
 
 
 4
 The appellants alleged in their complaint that O.G. Kelley failed to make contributions to employee benefit trust funds as required by collective bargaining agreements to which the appellants allege O.G. Kelley is bound. The appellants thus alleged that O.G. Kelley breached the collective bargaining agreements.
 
 II. PROCEDURAL HISTORY
 
 5
 In 1992, the union filed a LMRA § 301 breach of collective bargaining agreement action against O.G. Kelley in the U.S. District Court for the Eastern District of Tennessee. Also in 1992, the Funds filed this action against O.G. Kelley, in the U.S. District Court for the Middle District of Pennsylvania. The Funds' case was transferred to the Tennessee court and subsequently consolidated with the union's action for purposes of discovery and trial.
 
 
 6
 In the spring of 1993, O.G. Kelley filed a motion for summary judgment against all the plaintiffs in the consolidated case and the Funds and the union filed counter-motions for summary judgment. In a July 30, 1993 order, the district court dismissed the Funds' cause of action and also denied the Funds' motion for summary judgment. In the same opinion, the district court granted the union's motion for partial summary judgment on the issue of liability, finding that O.G. Kelley was indeed bound by the collective bargaining agreements at issue, and ordered that case to proceed to trial on the issue of damages.[1]
 
 
 7
 The Funds filed a motion for reconsideration of the district court's dismissal of this action and the district court denied the motion. The Funds now appeal to this court the district court's order denying reconsideration of its dismissal of their case, arguing that the district court erred in its interpretation of the LMRA "written agreement" requirement.III. DISCUSSION
 
 
 8
 The appellants contend that the district court erred in denying their Fed.R.Civ.P. 59(e) motion to reconsider the dismissal of their case on the basis that the "written agreement" requirement of LMRA § 302(c)(5)(B), 29 U.S.C. § 186(c)(5)(B), includes a requirement that the employer's signature appear on the written agreement. Such denials are typically reviewed for an abuse of discretion, but where a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, as it did here, we conduct a de novo review. See Columbia Gas Transmission Corp. v. Limited Corp., 951 F.2d 110, 112 (6th Cir.1991); see also United States v. Thomas, 111 F.3d 426, 428 (6th Cir.1997) (noting that district court's interpretation of a federal statute is a matter of law to be reviewed de novo ), cert. denied, --- U.S. ----, 118 S.Ct. 209, 139 L.Ed.2d 145 (1997).
 
 
 9
 The Funds' claim for enforcement of contribution obligations is based on ERISA § 515 which provides that
 
 
 10
 [e]very employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
 
 
 11
 29 U.S.C. § 1145. That obligation is non-existent unless a provision of the LMRA is satisfied. Section 302(a) of the LMRA prohibits employers from making payments to representatives of employees unless the payments fall within one of the statutory exceptions. 29 U.S.C. § 186(a). One exception allows an employer to make contributions to a trust fund established for the benefit of employees if the obligation to contribute is specified in a written agreement. Merrimen v. Paul F. Rost Elec., Inc., 861 F.2d 135, 137 (6th Cir.1988). Under § 302(c)(5)(B) of the LMRA, an employer's contributions to a multi-employer trust fund are unenforceable unless "the detailed basis on which such payments are to be made is specified in a written agreement with the employer." 29 U.S.C. § 186(c)(5)(B).
 
 
 12
 The district court dismissed the Funds' ERISA action to recover delinquent contributions because the Funds could not show that O.G. Kelley ever signed the collective bargaining agreements in question or the trust agreements. "[T]he Funds cannot show that Kelley ever signed the collective bargaining agreements in question or the trust agreement.... In light of the undisputed fact that Kelley never executed any writing which satisfies the writing requirement of both the LMRA and ERISA, the Funds' claim must be dismissed." In its dismissal, the district court cited Merrimen, 861 F.2d 135, reading it as imposing a requirement that an employer sign the written agreement required by LMRA § 302. The district court noted the same reason for the dismissal in its denial of the plaintiff-appellants' motion to reconsider.
 
 
 13
 This case requires us to decide whether the "written agreement" required by § 302 requires that the employer be a signatory to the agreement or whether an employer may be bound to a § 302 written agreement without actually being a signatory to the agreement, that is, may an employer delegate the authority to sign onto a "written agreement" for purposes of § 302?
 
 
 14
 The Funds contend that O.G. Kelly was bound to the collective bargaining agreements between Local 153 and the NLBA, as found by the district court (in granting the union partial summary judgment in its case), and because those agreements require contributions to the Funds, O.G. Kelley is in violation of ERISA § 515. The Funds argue that the district court erred in relying on Merrimen to impose a signature requirement under LMRA § 302(c)(5)(B).
 
 
 15
 Merrimen did not decide if a collective bargaining agreement negotiated by a multi-employer association that was not signed by an individual employer may satisfy LMRA § 302's "written agreement" requirement. In Merrimen, this court held that an employer's assent to be bound by the pension provisions of a collective bargaining agreement could not be inferred from conduct alone where the employer indisputably did not adopt or promise to adopt the agreement in any form of writing and where the collective bargaining agreement required a signature in order to bind an employer. Merrimen does not preclude the Funds' suit to recover contributions as it does not impose a statutory signature requirement.
 
 
 16
 Because we are not constrained by previous decisions in this circuit as the district court thought, an inquiry as to the possibility of a statutory signature requirement begins with the statute. Absent ambiguity or a result that is demonstrably at odds with legislative intent, statutory provisions must be accorded their plain meaning. Nixon v. Kent County, 76 F.3d 1381, 1386 (6th Cir.1996). Section 302(c)(5)(B) allows an employer to makes contributions to a employee trust fund when "the detailed basis on which such payments are to be made is specified in a written agreement with the employer." 29 U.S.C. § 186(c)(5)(B). The statute does not specify any signature requirement and the term "written agreement" is unambiguous in relation to such. The purpose of the "written agreement" requirement is to ensure that employer contributions are for a proper purpose and that benefits from the fund reach only the proper parties. Moglia v. Geoghegan, 403 F.2d 110, 116 (2d Cir.1968); see also Central States S.E. and S.W. Areas Pension Fund v. Kraftco, Inc., 799 F.2d 1098, 1110 (6th Cir.1986) (noting one purpose of § 302 as being to prevent criminal activity in union affairs); Producers Dairy Delivery Co. v. Western Conference of Teamsters Pension Trust Fund, 654 F.2d 625, 627 (9th Cir.1981) ("The purpose of section 302's ['written agreement' requirement] is to prevent employers from tampering with the loyalty of union officials, and to prevent union officials from extorting tribute from employers." (citation and quotation omitted)). No conflict with the legislative purpose is implicated in reading the "written agreement" requirement to be devoid of a employer signature requirement; setting the agreement down in writing offers the intended protection.
 
 
 17
 This reading of the statute is supported by other courts' handling of this same issue. See O'Hare v. General Marine Transport Corp., 740 F.2d 160, 164 n. 2, 172-73 (2d Cir.1984) (finding LMRA § 302(c)(5)(B)'s written agreement requirement satisfied where the written agreement was signed by a representative of the industry association and not by participating employers); Trustees of the Washington Area Carpenters' Pension and Retirement Fund v. Mergentime Corp., 743 F.Supp. 422, 425 (D.Md.1990) ("Employers are not required to be 'signatories' to the actual trust agreement. The only requirement is that there is a 'written agreement' detailing the basis for payments.") (citing Landy Packing Co. v. Amalgamated Meat Cutters & Food Handlers of N. Am., AFL-CIO, Dist. Local 653-653A, 471 F.Supp. 1218, 1222 (D.Minn.1979)); Newberry v. O'Connell, 507 F.Supp. 800, 802 (W.D.Va.1981) ("The statutory requirement that there be a written agreement before contributions can be made ... [does not] ... require the contributing employer to actually sign the agreement."); William Dunbar Co. v. Painters and Glaziers Dist. Council No. 51, 129 F.Supp. 417, 423 (D.D.C.1955) ("The requirement ... is nothing more than the requirement that there shall be a written agreement. It does not declare that it shall be a signed agreement. If that were necessary, Congress undoubtedly would have put it into the act itself."); see also Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 261-62 (2d Cir.1990) (specifically rejecting the argument that employer not bound to contract without its own signature and finding that employer was bound by agreement establishing longshoremen pension fund obligations where shipping association executed agreement on behalf of its members and association by-laws provided that such an agreement was binding on all members). Our reading of the statute also coheres with a well-developed body of law allowing employer associations to bind employer members to collective bargaining agreements. See, e.g., Trustees of U.I.U. Health and Welfare Fund v. N.Y. Flame Proofing Co., 828 F.2d 79 (2d Cir.1987) (finding agreement enforceable where multi-employer association had no written authorization from members and members never signed agreement); NLRB v. Beckham, Inc., 564 F.2d 190 (5th Cir.1977) (finding apparent authority delegated and employer bound where employer participated in negotiations with awareness that association would bind all members even though it refused to sign agreement at end of negotiations); NLRB v. Central Plumbing Co., 492 F.2d 1252 (6th Cir.1974).
 
 
 18
 In sum, the statute is satisfied by a written agreement to which an employer is bound, not a written agreement to which an employer is bound which also carries that employer's signature.
 
 IV. CONCLUSION
 
 19
 For the foregoing reasons, we REVERSE and REMAND this matter to the district court for further proceedings.
 
 
 
 [1]
 Since this case was docketed with this court, the consolidated case in which the union was the plaintiff was scheduled for trial on the issue of damages for May 1995. Several days before trial, the district court dismissed the union's case for lack of standing insofar as it sought to recover fund contributions. The union's action subsequently proceeded to trial on the remaining damages issues. It was subsequently appealed to and docketed in this court, Lead Burners Local Union No. 153 v. O.G. Kelley & Co., Inc., No. 96-5187, and was dismissed for failure to prosecute on October 22, 1996. The appellee makes an argument that this court does not have jurisdiction for this appeal, citing some cases holding that an appeal may not be taken from a consolidated matter until the entire matter has been resolved in a final, appealable order. That argument is mooted by the fact that since the briefs were filed in 1994, the district court has disposed of the entire consolidated case